IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 12, 2006 Session

## STATE OF TENNESSEE v. WILLIAM GRANVILLE HOWELL

**Direct Appeal from the Circuit Court for Hardeman County**
**No. 05-01-0064     J. Weber McCraw, Judge**

_____

**No. W2005-02837-CCA-R3-CD  - Filed February 1, 2007**

_____

Defendant, William Granville Howell, was indicted for aggravated assault.  Following a jury trial, Defendant was convicted of simple assault and sentenced to serve eleven months, twenty-nine days, with the sentence suspended.  On appeal, Defendant argues that his conviction should be reversed because (1) the evidence was insufficient to support a conviction of simple assault beyond a reasonable doubt; (2) the trial court erred in admitting testimony pertaining to a prior assault claim against Defendant; and (3) trial counsel was ineffective in failing to object to the admission of the prior conviction and for opening the door for introduction of this evidence.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Daniel J. Taylor, Jackson, Tennessee, (on appeal); and Jon York, Jackson, Tennessee, (at trial), for the appellant, William Granville Howell.

Robert E. Cooper, Jr., Attorney General and Reporter; Brian Clay Johnson, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; Joe Van Dyke, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. Background**

Raymond Jenkins worked at the Granville Howell Sawmill for approximately ten years.  On January 10, 2005, Mr. Jenkins clocked in to work at 6:55 a.m.  Mr. Jenkins stated that after clocking in, "I was walking to my job and [Defendant] came at me with the truck, me and [Knievel Brown], and tried to run us over with the truck so we jumped out of the way in the mud puddle."  According to Mr. Jenkins, Defendant told him and Mr. Brown to "get in the truck" with him.  Mr. Jenkins got

in the front seat of the truck and Mr. Brown got in the back in the bed of the truck. Defendant immediately pointed a gun at Mr. Jenkins's head and said, "[b]oy, I'll kill you." Defendant continued driving the truck while keeping his hand on the trigger. The ride continued for approximately one minute until they reached the job site. Mr. Jenkins and Mr. Brown then jumped out of the truck and Defendant drove away. Mr. Jenkins said the gun was a "pistol" and described it as "rusty" and "black looking" and said it could have been rusty but he was not certain. Mr. Jenkins identified Defendant as the man who pulled the gun on him.

Mr. Jenkins did not know why Defendant put the gun to his head. He said that on a prior occasion Defendant pointed a gun at his feet but he did not report it because he was scared. Nothing had happened to cause problems between the two men either at work or otherwise. Mr. Jenkins said that at the time of the incident, he felt "scared" and "nervous" and "feared for his life." He stated that since that time, he had been "having accidents" and had continued to fear for his life. Despite needing employment, Mr. Jenkins had not returned to his job at the sawmill. His wife picked up his last paycheck because Mr. Jenkins did not feel like it was safe to return to the sawmill.

Mr. Knievel Brown testified that he had worked at the Granville Howell Sawmill for approximately three years. On the day of the incident, he was walking to the job site with Mr. Jenkins when Defendant swerved his truck toward them. They were forced to jump out of the way and into a mud puddle. Defendant then told both men to "get in the truck." Mr. Brown got in the back of the truck. He did not hear any exchange of words between Mr. Jenkins and Defendant. Through the back window of the truck, he saw Defendant point a short-barreled gun at Mr. Jenkins's head. Mr. Brown said that the gun appeared black but he did not know whether the gun was rusty.

Mr. Brown said that the ride to the job site was brief, approximately thirty seconds. The two men got out of the truck as soon as they arrived at the site. Defendant did not say anything to Mr. Brown or Mr. Jenkins following the incident. Mr. Brown said that he and Mr. Jenkins were not friends and did not talk outside of work. At the time of trial, they had not spoken to one another since the incident occurred. Mr. Brown had maintained his job at the sawmill, and he admitted that he was reluctant to testify on behalf of Mr. Jenkins. He was not aware of any disagreements between Defendant and Mr. Jenkins prior to January 10, 2005.

Defendant testified that he owned the Granville Howell Sawmill and had been in the sawmill business for approximately fifty years. According to Defendant, Mr. Jenkins had not worked in the month preceding January 10, 2005, and that day was his first day to return to work. According to Defendant, Mr. Jenkins and Mr. Brown were walking to their job site at the sawmill when Defendant "eased up behind them and tooted [the] horn" of his truck. Mr. Jenkins jumped over in a mud hole and called Defendant a "big son-of-a-b - - - - ." Defendant told the men to get in the truck and then drove them to the sawmill and let them out. He said it was not unusual for him to give his employees rides while at work. Defendant said the ride he gave Mr. Jenkins and Mr. Brown lasted a "couple of minutes."

Defendant denied having a pistol in the truck with him on January 10, 2005. He said that the truck seat was "full of wrenches" that he had been using to work on the sawmill. He described the wrenches as "silver" and said they had grease on them from use at the sawmill. He also did not have any pistols in his house because they had been stolen when his house was burglarized "a couple of months" prior. Defendant denied pointing a pistol at Mr. Jenkins, but admitted he was mad that Mr. Jenkins called him a name.

Mike Nelson testified that he operated the forklift and the knuckle boom at the Granville Howell Sawmill. At the time of trial, he had worked in that capacity for approximately thirteen months. On the morning of the incident, Mr. Nelson was driving the forklift when he saw Mr. Jenkins and Mr. Brown walking toward the sawmill. He saw Defendant pull his truck behind the men and toot the horn. The men jumped out of the way of the truck and into some mud. Mr. Nelson then saw the men get into the truck with Defendant who drove them the remaining seventy-five yards to the sawmill. Mr. Nelson said that it was his job to watch the yard around the sawmill. He watched the progress of Defendant's truck from the time he picked the two men up until the truck stopped in the sawmill yard. He said that from his vantage point inside the forklift, he could see through the front windshield and into Defendant's truck. He did not see Defendant point a gun at Mr. Jenkins. Mr. Nelson said he had not seen Defendant carrying a pistol or other firearm during the thirteen months he had been employed at the sawmill.

On cross-examination, Mr. Nelson reiterated that he had not seen Defendant with a firearm, but admitted that Defendant may have owned a rifle because he was a farmer who had cows. Mr. Nelson stated that although he was maneuvering the forklift around the yard as the vehicle approached, he maintained his view of Defendant's truck and the passengers as a safety precaution. Over objection from the defense, Mr. Nelson was then asked whether he would be surprised to know that in 2000 a complaint was filed against Defendant in which it was alleged that Defendant had pulled a gun on a man at the sawmill and pointed the gun at his head. Mr. Nelson replied, "[y]es, sir, it shocked me. I wasn't there so I couldn't tell you whether he did or didn't."

Perry Howell, Jr., Defendant's grandson, testified that he was employed at Granville Howell Sawmill at the time of the incident and he was operating the knuckle boom on the morning of January 10, 2005. He explained that a knuckle boom is a machine used to unload and cut logs from the log truck. As he was "unbooming" some of the logs, he noticed two men walking toward the sawmill followed by Defendant's truck. He said that as Defendant pulled the truck up behind the men, "they just kind of stepped over and one gentleman got in the truck and the other one got on the back of the truck and he carried them on down to the mill." Mr. Howell said that Defendant did not own any pistols at the time of the incident because they had been stolen when his house was burglarized approximately six months prior.

On cross-examination, Mr. Howell admitted that he did not know exactly what was taken when Defendant's home was burglarized. It was his belief that the guns were stolen because that is what Defendant told him but he did not have personal knowledge of this fact. He also said that he did not remember the names of the men who got in the truck with Defendant, and he only recalled

that the date of the incident was January 10, 2005, because the defense attorney said that it occurred on that date. Mr. Howell reiterated that the burglary occurred six months prior to the incident and stated that he was sure the burglary was reported to the sheriff's department. He said he would be surprised to learn that no burglary had been reported to the sheriff's department in 2004.

William Nelms testified that he lived in a house on the sawmill property owned by Defendant and had known Defendant for twenty years. Mr. Nelms said that Defendant did not carry a pistol and had not owned a pistol since his house was burglarized and his guns were stolen. On cross-examination, Mr. Nelms said the burglary occurred "three or four months" prior to the January 10, 2005 incident. Because he was unsure about the date of the burglary, Mr. Nelms said he would not be surprised to learn that there were no burglaries reported to the sheriff's office in 2004. He further stated that he did not actually know whether Defendant owned any pistols. He said that although he had never personally seen Defendant with a pistol, it was possible that Defendant owned a pistol.

Deputy Andy Hamburg of the Hardeman Sheriff's Department testified that he took the initial report of the incident from Mr. Jenkins. He further testified that an inquiry revealed that no burglaries had been reported to the sheriff's department in 2004. However, he did find a report of a burglary in the latter part of 2003. On cross-examination, Deputy Hamburg said that he did not read the report of the burglary. He stated that he spoke with Mr. Jenkins and Mr. Brown about what occurred on January 10, 2005, but did not speak to Defendant until after charges had been filed. He never searched for a gun or a saw a gun in plain view in Defendant's truck. His report included a description of a rusty, .38 caliber pistol because that is the description given to him by Mr. Jenkins. Deputy Hamburg was aware that a similar claim was filed against Defendant in 2000 and he admitted using this knowledge during his investigation of the January 2005 incident.

## II. Analysis

### A. Sufficiency of the Evidence

Defendant first contends that the evidence was insufficient to convict him of assault beyond a reasonable doubt. In support of his argument, he asserts that Mr. Jenkins's testimony was incredible because he claimed that Defendant pointed a firearm at him and threatened him for no reason. He further asserts that Mr. Jenkins gave inconsistent descriptions of the weapon. Specifically, Mr. Jenkins could not describe the color of the weapon or whether it was a long or short barrel pistol. He also asserts that Mr. Jenkins's claim that he was mad at Defendant for forcing him into a mud puddle is inconsistent with the eyewitness testimony. He argues that the eyewitnesses observed nothing out of the ordinary and saw only Defendant giving Mr. Jenkins a ride in his truck. Finally, he asserts that Mr. Brown did not corroborate Mr. Jenkins's claim that he was threatened and points out that he did not contact the police or volunteer information until contacted by the sheriff's office.

On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the

reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983). "This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence." *State v. Land*, 34 S.W.3d 516, 533 (Tenn. Crim. App. 2000). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992).

Tennessee Code Annotated section 39-13-101 provides in pertinent part that a person commits assault who intentionally or knowingly causes another to reasonably fear imminent bodily injury. T.C.A. § 39-13-101(a)(2). In the case *sub judice*, Mr. Jenkins testified that as he was walking to the mill with Mr. Brown, Defendant pulled his truck behind them, swerved at them, and caused the two men to jump into a mud puddle. At Defendant's instruction, Mr. Jenkins and Mr. Brown got into his truck where Defendant immediately put a gun to Mr. Jenkins's head and said, "[b]oy, I'll kill you." Defendant continued to hold the gun to Mr. Jenkins's head, with his hand on the trigger, while driving to the mill. Mr. Brown testified that from his position in the back of the truck he saw Defendant put the gun to Mr. Jenkins's head. Mr. Jenkins said that he was "scared" and "nervous" and that he feared for his life and had continued to do so until the time of trial. Mr. Nelson testified that he witnessed the truck ride and did not see Defendant put a gun to Mr. Jenkins's head. Mr. Howell and Mr. Nelms testified that Defendant did not own any guns because they had been stolen during a home burglary. As evident by Defendant's conviction, the jury resolved any discrepancy in evidence in favor of the State. We conclude that the jury could reasonably find Defendant guilty of assault and we will not second-guess the jury's determination. Accordingly, Defendant is not entitled to relief on this issue.

## B. Evidence of Prior Conduct

Defendant next contends that the trial court should not have allowed the prosecutor to question Mr. David Nelson about a prior aggravated assault claim against Defendant. The general rule is that evidence of prior conduct is inadmissible, especially when previous crimes or acts are of the same character as the charged offense, because such evidence is irrelevant and invites the "finder of fact to infer guilt from propensity." *State v. Hallock*, 875 S.W.2d 285, 290 (Tenn. Crim. App. 1993). Tennessee Rule of Evidence 404(b) permits the admission of evidence of prior conduct if the evidence of other acts is relevant to a litigated issue such as identity, intent, or rebuttal of accident or mistake, and the probative value outweighs the danger of unfair prejudice. *See* Tenn. R. Evid. 404(b) Advisory Comm'n Comments; *State v. Parton*, 694 S.W.2d 299, 303 (Tenn. 1985); *State v. Hooten*, 735 S.W.2d 823, 824 (Tenn. Crim. App. 1987). However, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. 404(b). Before admitting evidence under rule 404(b), the rule

provides that (1) upon request, the court must hold a hearing outside the jury's presence; (2) the court must determine that the evidence is probative on a material issue and must, if requested, state on the record the material issue and the reasons for admitting or excluding the evidence; and (3) the court must exclude the evidence if the danger of unfair prejudice outweighs its probative value. Tenn. R. Evid. 404(b).

In the present case, during a pre-trial hearing, the following discussion was held:

THE COURT:                    Counsel, what's the issue you want the Court to decide here specifically?

[TRIAL COUNSEL]:              Specifically, if there is testimony that states that Mr. Howell did not have a handgun with him on that day and did not routinely or regularly carry a handgun into the sawmill, that that will not provide the opportunity for Mr. Van Dyke to bring up [Defendant's] prior conviction.

THE COURT:                    All right. That request will be denied. Any other preliminary issues?

GENERAL VAN DYKE:             I'm sorry. What did the Court rule?

THE COURT:                    I denied his motion, his request, because the affidavit that we have a finding of guilty on apparently occurred at the same sawmill that's at issue today.

During the testimony of Mr. David Nelson, trial counsel asked Mr. Nelson if he had seen Defendant carrying a firearm or pistol during the thirteen months he had been employed at the sawmill. Mr. Nelson denied ever seeing Defendant with a gun. On cross-examination, the prosecutor asked Mr. Nelson if he would be surprised to learn that on a prior occasion in 2000, a complaint was filed against Defendant for aggravated assault in which the complainant alleged that he was at the sawmill when Defendant pulled a gun on him, cocked it twice, and pointed the gun at his head. Over objection from the defense, the trial court found that trial counsel opened the door to the prosecutor's question by asking Mr. Nelson if he had seen Defendant with a gun during the course of his thirteen months of employment. Thus, the prior aggravated assault complaint against Defendant was mentioned in the presence of the jury. The complaint was also referenced during subsequent testimony from other witnesses as well as closing argument. The pertinent portions of the testimony at issue are as follows:

[TRIAL COUNSEL]:              You've been working [at the sawmill] for thirteen (13) months?

MR. NELSON:               Yes, sir.

[TRIAL COUNSEL]:          In that thirteen (13) months, have you seen Mr. Granville carry a firearm - - a pistol?

MR. NELSON:               No, sir.

                                    * * *

GENERAL VAN DYKE:         [Trial Counsel] asked you an interesting question, if you've ever known Mr. Howell to have a gun.

MR. NELSON:               No, sir.

GENERAL VAN DYKE:         Never have?

MR. NELSON:               No, sir, not the whole time I've worked there.

GENERAL VAN DYKE:         At no time whatsoever?  Not even a rifle?

MR. NELSON:               He may have.  He's a farmer, got cows.

GENERAL VAN DYKE:         Okay.  Well, would it come as a surprise to you, then-

[TRIAL COUNSEL]           Your Honor?

THE COURT:                Do you want to approach?

(**Whereupon**, a bench conference was had on the record in the presence of the jury but out of the hearing of the jury and the following proceedings were had, to-wit:)

[TRIAL COUNSEL]:          I know we discussed this earlier.  I think Mr. Van Dyke is stretching the response that I had when I asked him in the time that he had worked there, the thirteen (13) months that he had worked there, if he had ever seen Mr. Howell with a gun.

GENERAL VAN DYKE:         I don't think him trying to limit that time frame can keep me from bringing up what had happened on that other occasion.  I think that he has opened the door to whether or not Mr. Howell had guns there at the lumber yard.

| | |
|---|---|
| [TRIAL COUNSEL]: | Your Honor, this happened in 2000. Mr. Nelson said he's only worked there for thirteen (13) months. |
| GENERAL VAN DYKE: | And I think the State - - |
| THE COURT: | Let me see that judgment. |
| GENERAL VAN DYKE: | Mr. Jenkins said Mr. Howell had done this to him before. |
| THE COURT: | What was your last question to the gentleman? Have you ever know him to - - |
| GENERAL VAN DYKE: | I said [trial counsel] asked him if he had been known to have a gun at the sawmill. |
| THE COURT: | And then you asked him that as well. |
| GENERAL VAN DYKE: | If he would find it surprising to know that at this point he did. |
| THE COURT: | Anything further. |
| [TRIAL COUNSEL]: | No, Your Honor. |
| THE COURT: | I think the door has been opened. I'm going to allow it. |

(Said bench conference having been completed, the following proceedings were had on the record in the presence and hearing of the jury, to-wit:)

| | |
|---|---|
| THE COURT: | You'll need to restate your question. |
| GENERAL VAN DYKE: | Mr. Nelson - - |
| MR. NELSON: | Yes, sir. |
| GENERAL VAN DYKE: | - - you say you've never known [Defendant] to have a gun there at the saw mill. |
| MR. NELSON: | No, sir, never known it. |

-8-

| | |
|---|---|
| GENERAL VAN DYKE: | So would it come as a surprise to you to know that in October of 2000 a Mr. Curtis Brown filed a complaint for aggravated assault saying that at the sawmill Mr. Granville Howell pulled a gun on him and pointed it at his head? Would that come as a surprise to you? |
| MR. NELSON: | Yes, sir, it shocked me. I wasn't there so I couldn't tell you whether he did or didn't. |
| GENERAL VAN DYKE: | Well, I'll tell you what. Just to show you, this says "On the above date Curtis Brown gave information that he was at Granville Howell's sawmill in Bolivar, Hardeman County, Tennessee, when Granville Howell pulled out a gun on him, cocked it twice and pointed it at his head." That's what that says, isn't it? |
| MR. NELSON: | Yes. |

We first note that mentioning the prior charge against Defendant does not fall into one of the recognized exceptions for admitting evidence of prior bad acts, i.e., identity, intent, or rebuttal of accident or mistake. *See* Tenn. R. Evid. 404(b) Advisory Comm'n Comments. Furthermore, the trial judge did not specifically weigh the probative value of the evidence against its potential prejudicial effect in his findings of fact, nor do any of his comments indicate that he considered the evidence highly probative of any particular litigated fact. Tenn. R. Evid. 404(b). In our view, the testimony at issue lacked any significant probative value as to the crime alleged and reflected only a propensity on the part of Defendant to have committed the crime. Tenn. R. Evid. 404(a). Accordingly, we conclude that the trial court failed to comply with the requirements of 404(b), and the evidence admitted as a result of this failure presented a danger of unfair prejudice that outweighed any probative value the evidence may have possessed.

Nevertheless, viewing the contested evidence in light of the entire record, we find that it was harmless error to allow evidence of a prior claim against Defendant to be admitted. Tenn. R. App. P. 36. Mr. Jenkins positively identified Defendant at trial, and testified that Defendant held a gun to his head, with his finger on the trigger, and threatened Mr. Jenkins's life. Mr. Brown also positively identified Defendant at trial, identifying him both as his employer, and the man who he had seen hold a gun to Mr. Jenkins's head. This evidence was sufficient for a conviction of assault without the collateral evidence of the prior charge against Defendant. Additionally, as pointed out by the State, the jury acquitted Defendant of the charged offense of aggravated assault despite having knowledge that a previous complaint had been filed against Defendant for an identical offense. We find this persuasive and conclude that the jury "was not unduly or unfairly affected" by knowledge of the prior complaint. *See State v. Venita Michelle Burchell*, No. M2002-02153-CCA-R3-CD, 2001 WL 31520651, *10 (Tenn. Crim. App., at Nashville, Nov. 13, 2002) (no Tenn. R. App. P. 11 application filed). Defendant is not entitled to relief on this issue.

C. Ineffective Assistance of Counsel

In his final issue, Defendant asserts that "if this Court finds that trial counsel opened the door to admission of his prior conviction by asking Mike Nelson about his knowledge as to whether in the last thirteen months the Appellant had a firearm" then this Court should find that "counsel was ineffective and [Defendant] suffered as a result of this ineffectiveness." Defendant specifically argues on appeal that trial counsel was ineffective because (1) he failed to file a motion in limine to exclude evidence of Defendant's prior conviction; (2) he mistakenly believed the prior conviction would be admissible; (3) he failed to object to the State's introduction of evidence of the prior aggravated assault complaint; (4) he failed to object to Deputy Hamburg's testimony regarding the prior conviction; (5) he failed to object to the State's use of the prior conviction during closing argument, (6) trial counsel discussed the conviction during closing argument, and trial counsel opened the door for admission of the prior assault into evidence.

We first note that claims of ineffective assistance of counsel are generally more appropriately raised in a petition for post-conviction relief rather than on direct appeal. *See State v. Carruthers*, 35 S.W.3d 516, 551 (Tenn. 2000). This Court has consistently "warned defendants and their counsel of the dangers of raising the issue of ineffective assistance of trial counsel on direct appeal because of the significant amount of development and fact finding such an issue entails." *Kendricks v. State*, 13 S.W.3d 401, 405 (Tenn. Crim. App. 1999). Raising the issue of ineffective assistance of counsel on direct appeal is "a practice fraught with peril." *State v. Thompson*, 958 S.W.2d 156, 161 (Tenn. Crim. App. 1997). This peril is two-fold. First, ineffective assistance can rarely be established without an evidentiary hearing. *See Strickland v. Washington*, 466 U.S. 668, 689-90, 694, 104 S. Ct. 2052, 2065, 2067, 80 L. Ed.2d 674 (1984). Post-conviction procedures afford an evidentiary hearing to a Defendant with colorable claims. *See* T.C.A. §§ 40-30-109(a), - 110 (2006). Second, raising the issue in the direct appeal could result not only in losing on appeal, but also in barring the claimant from raising the issue later in the post-conviction arena. T.C.A. §§ 40-30-106(f) & (h) (2006). A post-conviction claim for ineffective assistance of counsel will be dismissed where that claim has previously been determined by another court. T.C.A. § 40-30-106(f). "A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing. A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence." T.C.A. § 40-30-106(h). However, because there is nothing barring a defendant from bringing an ineffectiveness claim in a direct appeal, we will proceed with our analysis of Defendant's claim.

Under Tennessee Code Annotated section 40-30-110(f) (2003), a defendant seeking post-conviction relief on the basis of ineffective assistance of counsel is required to prove his or her allegations "by clear and convincing evidence." This same standard applies even when the claim of ineffective assistance of counsel is raised on direct appeal. *State v. Burns*, 6 S.W.3d 453, 461 n.5 (Tenn. 1999) (citing *State v. Anderson*, 835 S.W.2d 600, 607 (Tenn. Crim. App. 1992)). The factual findings entered by the post-conviction court are conclusive unless the defendant establishes that the evidence preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 457 (Tenn. 2001).

For a defendant to successfully overturn a conviction based on ineffective assistance of counsel, the defendant must first establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Second, the defendant must show that the deficiencies "actually had an adverse effect on the defense." *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674 (1984). The defendant is not entitled to the benefit of hindsight; the defendant may not second-guess a reasonably based trial strategy; and the defendant may not criticize a sound, but unsuccessful, tactical decision made after adequate preparation for the case. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In this case, although Defendant's counsel at the hearing on the motion for new trial made legal arguments and references to the transcript, Defendant did not testify, nor did he elicit testimony of his trial counsel or any other evidence in support of his assertion that his trial counsel rendered ineffective assistance of counsel. Given the nature of the record, it is easy to conclude that Defendant failed to provide clear and convincing proof of ineffective assistance of counsel, despite being given the opportunity to do so. In any event, as discussed earlier in this opinion, the error in mentioning Defendant's prior criminal charge is attributed to the trial court. This is because the trial court failed to follow the procedural requirements of Tennessee Rule of Evidence 404(b) for admitting prior acts of the defendant into evidence. As such, we cannot, as Defendant urges, conclude that trial counsel was ineffective in opening the door to admit the prior conviction. Nor can we find counsel ineffective for failing to file a motion in limine to exclude the prior conviction. Rule 404(b) requires only that counsel request a hearing be conducted outside the presence of the jury in order to determine the admissibility of the evidence. The record reflects that at counsel's request the trial court addressed the issue of the prior conviction outside the presence of the jury. Although the outcome of that hearing was unfavorable to Defendant, he has not demonstrated that he was prejudiced by counsel's decision not to file a motion in limine. With respect to the remainder of Defendant's claims that counsel was ineffective, he failed to raise these claims either in his amended motion for new trial or at the hearing on the motion for new trial. These claims cannot be raised for the first time on appeal. *State v. Alvarado*, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996) (stating "an issue raised for the first time on appeal is waived"). Even had the claims not been waived, Defendant has failed to show he was prejudiced. Having failed to call trial counsel as a witness, we cannot presume that counsel's decision not to object to testimony about the prior conviction or his use of the prior conviction in closing argument were anything other than trial strategy. Accordingly, Defendant is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE

-11-